Blerim TOCCI, Petitioner,

v.

UNITED STATES of America,
Respondent.

United States of America

v.

Blerim Tocci, Defendant.

No. 01–CV–264(DRH).
No. 98–CR–408.

United States District Court,
N.D. New York.

Dec. 20, 2001.

Mark T. Kenmore, Buffalo, NY, for Petitioner/Defendant Blerim Tocci.

Hon. Joseph A. Pavone, United States Attorney for the Northern District of New York, Albany, NY (Richard S. Hartunian, Assistant United States Attorney, of Counsel), for respondent U.S.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Presently pending is the petition and motion of Blerim Tocci ("Tocci") pursuant to 28 U.S.C. §§ 2241 and 2255 to vacate his conviction and sentence. For the reasons which follow, that relief is granted.[1]

### I. Background

Tocci, now thirty-two, was born in Yugoslavia (now Macedonia), moved to the United States with his parents and siblings in 1984, and has resided here ever since. Kenmore Affirm. (Docket No. 1) at ¶ 2; Tocci Aff. (Docket No. 1, Ex. H) at ¶ 5. Tocci became a lawful permanent resident of the United States in 1995. Kenmore Affirm. at ¶ 3 & Ex. A. He resides in Brooklyn, New York with his two United States citizen sons, ages nine and six. *Id.* at ¶ 3 & Ex. B.

On September 9, 1998 in the early morning hours, Tocci arrived at the Port of Entry at Rouses Point, New York southbound from Canada and driving a rented vehicle. *Id.* at ¶ 4; Gov't Mem. of Law (Docket No. 3) at Exs. 2, 5. Discovered hiding in the trunk of Tocci's car was Fatima Saimi, a citizen of Kosovo. Docket No. 3, Ex. 3 at 2. According to the United States, both Tocci and Saimi made statements to immigration officers following their arrests. According to Saimi, then eighteen, her mother had been killed by Serbian forces in Kosovo several months earlier and Saimi decided to seek asylum in the United States. Both Saimi and Tocci stated that they had met through an internet website which solicited volunteers to bring Kosovo refugees to the United States. In accordance with their arrangements, Tocci met Saimi in Montreal on September 8, 1998 and they proceeded toward the United States in Tocci's rented vehicle. Before reaching the border, Tocci instructed Saimi to hide in the trunk because he knew that, lacking a proper travel document, she could not enter the United States legally. Docket No. 3, Ex. 2.[2]

---

1. Tocci was sentenced by a United States Magistrate Judge on September 9, 1998. Following that judge's retirement, the above captioned actions were reassigned to the undersigned. Docket No. 4.

2. In his affidavit here, Tocci states that on September 8, 1998, he was asked by a man in Brooklyn named "Sammy" with whom Tocci played soccer to travel to Montreal to bring his fiancé to the United States border so that she could apply for asylum as a refugee from Kosovo. "Sammy" was unable himself to leave and re-enter the United States because of his own pending immigration proceeding. Tocci stated that he departed Brooklyn for Montreal the same day, met Saimi in Montreal and drove to the border where he stopped at the Port of Entry. Tocci further stated that

Tocci was placed under arrest and subsequently charged in an information with attempting to bring an alien to the United States illegally in violation of 8 U.S.C. § 1324(a)(2).[3] Docket No. 1, Ex. C; Docket No. 3, Ex. 4. At approximately 3:00 p.m. on the same day, Tocci appeared before the United States Magistrate Judge at Rouses Point. Tr. of Hearing (Docket No. 1) at 2. Present were the magistrate judge, the arresting officers and Tocci; no attorney was present for the United States and Tocci signed a waiver of his right to counsel. *Id.*; Docket No. 3, Ex. 7. Tocci consented to proceed before a magistrate judge (Docket No. 3, Ex. 7), pleaded guilty to the information and was sentenced to pay a fine of $475 and a special assessment of $25. Judgment (Docket No. 1, Ex. D). Tocci took no direct appeal from his sentence and conviction.

Following the proceeding, Tocci was served by an immigration officer with a "Notice to Appear in a Removal Action." Docket No. 1, Ex. F. The Notice commenced removal proceedings against Tocci in which the Immigration and Naturalization Service alleged that as a lawful permanent resident, Tocci should be ordered removed from the United States because he had knowingly aided, assisted and encouraged an alien, Saimi, to enter the United States illegally in violation of section 212(a)(6)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(E)(i).[4] *Id.* The hearing was scheduled to commence on March 17, 1999 in Buffalo. *Id.* Tocci was paroled into the United States pending completion of the removal proceedings. Kenmore Affirm. at ¶ 8 & Ex. G. Tocci has denied the charge in the Notice and has filed an application for asylum; the removal proceeding remains pending as does Tocci's application for asylum. *Id.* at ¶ 9.

## II. Discussion

### A. Jurisdiction

Tocci commenced these actions as a motion under 28 U.S.C. § 2255, which authorizes a sentencing court to vacate a sentence and conviction if "the sentence was imposed in violation of the Constitution or laws of the United States". However, that section imposes a one year period of limitation on filing such motions and the period begins to run from the latest of four contingencies. The contingency most favorable to Tocci provides that the period begins to run on "the date on which the facts supporting the ... claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4); *see Wims v. United States*, 225 F.3d 186, 190 (2d Cir.2000).[5]

---

he then entered the office for Saimi to apply for asylum. However, when he returned to the car with the immigration officer, Saimi was not in the car, having panicked and concealed herself in the trunk. Tocci Aff. at ¶¶ 5–43. Thus, according to Tocci's affidavit, he did not act illegally in bringing Saimi to the Port of Entry.

3. The maximum sentence set forth in the statute is imprisonment for one year and a fine of $100,000. The offense is classified as a Class A misdemeanor. 18 U.S.C. § 3559(a)(6).

4. This section provides for the removal from the United States of "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law ...." 8 U.S.C. § 1182(a)(6)(E)(i).

5. Tocci argues that the period of limitation under section 2255 should be equitably tolled. However, as *Wims* makes clear, the onset of the period may be delayed beyond the date the conviction became final only to the extent permitted by section 2255(4). *Wims*, 225 F.3d at 190. Equitable tolling requires a showing, not present here, "that extraordinary circumstances prevented [a petitioner] from filing his petition on time." *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir.2000).

■ Here, the affidavit submitted by Tocci in his removal proceeding indicates that, Tocci had received a transcript of his guilty plea, was represented by an attorney and was aware of the grounds on which a motion could be made under section 2255. That affidavit was executed by Tocci on October 13, 1999. Tocci Aff. at 13. Thus, viewing the record in the light most favorable to Tocci, the facts supporting his claims here could have been discovered by the exercise of due diligence no later than October 13, 1999 and his section 2255 motion must, therefore, have been filed on or before October 12, 2000. Tocci filed his motion herein on February 20, 2001, more than four months after the section 2255 period of limitation could have expired. Accordingly, relief is unavailable to Tocci under section 2255.

■ In the alternative, Tocci contends that jurisdiction exists under 28 U.S.C. § 2241. That section authorizes courts to issue writs of habeas corpus in the district where the petitioner is detained. The Second Circuit Court of Appeals has held that a court may exercise jurisdiction under section 2241 over an individual convicted in a federal court where relief under section 2255 is inadequate or ineffective and where the record of the case demonstrates that the petitioner is actually innocent. *See Triestman v. United States*, 124 F.3d 361, 377–79 (2d Cir.1997). However, relief under section 2241 is unavailable here to Tocci for at least two reasons. First, the record does not demonstrate Tocci's "actual innocence." *See id.* at 371 (vacating federal conviction under section 2241 where the petitioner was procedurally

barred from seeking relief under section 2255 and the record demonstrates the petitioner's "actual innocence"); *Fermin v. United States*, Nos. 99 Civ. 4127 & 99 Civ. 4128, 2000 WL 12133, at *4 (E.D.N.Y. Jan.6, 2000) (vacating one of petitioner's convictions under section 2241 as barred by the Double Jeopardy Clause). While Tocci's affidavit, if credited, establishes Tocci's innocence of the offense charged, that affidavit is contradicted by other evidence in the record, including the post-arrest statements of Tocci and Saimi. Thus, the record fails to establish Tocci's "actual innocence." Second, habeas corpus relief under section 2241 is available only to a petitioner whose liberty is then restrained in some fashion. *See Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2d Cir.1976) ("[d]espite the willingness of courts in recent years to broaden the concept of 'custody' beyond the simple status of present imprisonment, . . . it still remains an essential aspect of the habeas corpus writ."). Where, as here, a petitioner has completed service of his or her sentence, the "in custody" requirement cannot be satisfied by the pendency of immigration proceedings. *See Maleng v. Cook*, 490 U.S. 488, 492–93, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989); *United States v. Weiss*, 902 F.Supp. 326, 328–29 (N.D.N.Y. 1995).[6] Thus, section 2241 is also unavailable to Tocci here.

■ However, the fact that relief is unavailable to Tocci under either section 2255 or 2241 does not exhaust all possible bases for jurisdiction. Jurisdiction may also be found under the rarely issued com-

---

6. Venue under section 2241 is found in the district where the petitioner's liberty has been restrained. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Kahane v. Carlson*, 527 F.2d 492, 498 (2d Cir.1975). Tocci now resides in Brooklyn in the Eastern District of New York and the removal proceeding is pending in Buffalo in the Western District of New York. No proceedings against Tocci are presently pending in this district. Thus, it also appears that venue in the Northern District is improper under section 2241.

mon law writ of error coram nobis.[7] That "ancient" writ retains vitality under the All Writs Act, 28 U.S.C. § 1651(a).[8] *United States v. Mandanici*, 205 F.3d 519, 521 & n. 1 (2d Cir.2000); *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir.1998). "Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming*, 146 F.3d at 89–90. It serves "to extend the period ... in which the judge who rendered a decision could reexamine his handiwork." *Lowery v. McCaughtry*, 954 F.2d 422, 423 (7th Cir.1992). Coram nobis "is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir.1996). The burden of demonstrating entitlement to relief rests on the petitioner and it is presumed that the proceedings were correct. *See Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992).

■ A writ of error coram nobis may issue if a petitioner demonstrates that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Foont*, 93 F.3d at 79 (internal quotation marks, citations, and alterations omitted); *see also Fleming*, 146 F.3d at 90. Here, as discussed below in subsection B, the first requirement is satisfied. The third requirement is also satisfied by virtue of the pending removal proceeding, which appears predicated upon Tocci's conviction here. *See United States v. Ko*, No. 93 CR. 521, 1999 WL 1216730, at *4 (S.D.N.Y. Dec. 20, 1999) (holding that deportation proceedings sufficient to demonstrate adverse legal consequences); *United States v. Foont*, 901 F.Supp. 729, 734 (S.D.N.Y.1995), *aff'd*, 93 F.3d 76 (2d Cir. 1996) (holding that the loss of a professional license suffices to demonstrate adverse legal consequences).

■ As to the second requirement, Tocci must show "sound reasons" for the delay in bringing these actions. The sufficiency of the reasons bears an inverse relationship to the length of the delay—the longer the delay, the more compelling must be the reasons. *Compare Hairston v. United States*, No. CV 99–739, 1999 WL 1288967, at *2 (E.D.N.Y. Nov.1, 1999) (denying a petition brought twenty-two years after sentencing and rejecting as reasons the court's failure to advise the petitioner of rights to appeal and to appointment of counsel for appeal as well as petitioner's memory loss); *Graham v. Lamar*, No. 97 CV 2386, 1998 WL 960297, at *2 (E.D.N.Y. Dec. 16, 1998) (denying a petition brought twenty-two years after sentencing where the reasons offered included petitioner's ignorance of his rights to appeal and to counsel and petitioner's drug addiction), *with Ko*, 1999 WL 1216730, at *4 (granting writ brought approximately three years after sentencing where the reasons for delay included changes in the immigration law and the pendency of and delays in deportation proceedings). The sufficiency

---

7. At common law, this writ permitted a court to correct procedural errors, rather than errors of law, which occurred in its presence. *See Taylor v. State of Ala.*, 335 U.S. 252, 258 & n. 4, 68 S.Ct. 1415, 92 L.Ed. 1935 (1948).

8. The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

of the reasons is also peculiar to the facts and circumstances of the particular case.

Here, Tocci brought these actions two and one-half years after his sentencing. He offers as reasons for the delay the fact that he was neither advised of his right to appeal at sentencing nor otherwise aware of that right, his lack of counsel in that proceeding and the pendency of the removal proceedings. The ignorance of the right to appeal and the absence of counsel will not suffice when offered to explain a substantial delay. *See Hairston,* 1999 WL 1288967, at *2 (twenty-two years); *Graham,* 1998 WL 960297, at *2 (same). However, as discussed below, given the absence of counsel and of any advice to Tocci of his right to appeal, given the commencement and continued pendency of the removal proceeding, given the absence of any other direct or collateral reviews of Tocci's claims, and given the period of delay here, the reasons offered by Tocci for that delay in the circumstances of this case constitute "sound reasons" for his failure to seek earlier review. Accordingly, this Court has jurisdiction to consider Tocci's petition as one for a writ of error coram nobis.

### B. Guilty Plea and Sentencing

Tocci contends that his guilty plea and sentencing were defective in various ways. For the writ to issue here, any errors in those proceedings must be more than merely technical or harmless; they must be sufficiently serious that issuance of the writ is necessary "to achieve justice." *United States v. Morgan,* 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

### 1. Waiver of Right to Counsel

At his guilty plea proceeding, the court advised Tocci of his right to counsel and

that counsel could be appointed to represent him if he could not afford counsel. Tr. of Hearing at 2–3. He was not asked during the hearing if he waived his right to counsel. However, Tocci signed a document which stated that he "[w]aive[d] (give up) my right to a lawyer." *Id.* at 3–4; Docket No. 3 at Ex. 7. Tocci claims that this waiver was not knowing or voluntary and that he was denied his Sixth Amendment right to the effective assistance of counsel.

■ The Sixth Amendment right to counsel attaches at the initiation of adversarial proceedings. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). However, while that right exists in all cases where a felony is charged, it exists in cases where a misdemeanor is charged only if a sentence of incarceration is actually imposed. *Scott v. Illinois,* 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *United States v. Castro–Vega,* 945 F.2d 496, 499 (2d Cir.1991). No such sentence was imposed here. Tocci received a sentence of a fine and the judge stated that "you do not have to go to jail." Tr. of Hearing at 4.[9] Because Tocci was not sentenced to any period of incarceration, the Sixth Amendment right to counsel did not apply and Tocci was not entitled to counsel at the guilty plea even if his waiver of counsel was ineffective. Accordingly, Tocci's contention on this ground is rejected.

### 2. Voluntariness

At the guilty plea, the court stated to Tocci that

the Government recommends that if you say you're guilty today you'll be fined $500 and you do not have to go to jail.

---

9. The judgment states that Tocci was sentenced to "time served." Docket No. 1 at Ex.

D.

You don't have to say you're guilty if you don't want to. You can say that you're not guilty and have a lawyer and a trial and the case be postponed so that you have time to talk to a lawyer.

Tr. of Hearing at 3. No prosecutor was present at the proceeding. Tocci contends that this communication demonstrates that the court induced his guilty plea by offering a plea bargain suggested by the arresting officers, rendering his plea involuntary. The United States contends that the plea agreement as stated by the court was authorized by its attorney and that the court placed the promise on the record to insure that Tocci was aware of all promises made to him as part of the plea. *See* Fed. R.Crim.P. 11(e)(1)(B) & (C).

▆▆▆ Because a defendant waives many constitutional rights by pleading guilty, a guilty plea must be entered knowingly and voluntarily. *See Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (guilty plea "is a grave and solemn act to be accepted only with care and discernment"). To insure voluntariness, a court must elicit at the guilty plea any promises which the government has made to the defendant in return for the plea. *See McCarthy v. United States,* 394 U.S. 459, 464, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Fed. R. Cri. P. 11(e)(2). The record of the guilty plea establishes that the court stated to Tocci the promise made by the United States that it would recommend a fine and no imprisonment if he pleaded guilty. The fact that this promise was stated by the court rather than by a prosecutor or agent does not, as contended by Tocci, constitute the court improperly involving itself in plea bargaining in violation of Rule 11(e)(1). The court merely fulfilled its obligation to insure that Tocci's

plea was entered with full knowledge of all promises made by the United States.

Accordingly, Tocci's contention that the court's statement of this promise undermined the voluntariness of his plea must be rejected.

### 3. Factual Basis for the Guilty Plea

Tocci next contends that the court failed to establish a factual basis for the guilty plea and that this omission was particularly significant here where Tocci asserts his innocence. The United States responds that the court satisfied this requirement by reading the charge to Tocci in court, asking Tocci if he had any questions and accepting Tocci's plea of guilty. Tr. of Hearing at 2–3.

▆▆▆ The requirement that a court establish a factual basis for a guilty plea, codified in Fed. R. Crim P. 11(f), serves to protect a defendant from pleading guilty voluntarily but without realizing that his or her conduct does not actually violate the law. *See McCarthy,* 394 U.S. at 467, 89 S.Ct. 1166; *United States v. Maher,* 108 F.3d 1513, 1524 (2d Cir.1997). The factual basis may be established by "a defendant's own admissions, information from the government, or other information appropriate to the specific case." *United States v. Andrades,* 169 F.3d 131, 136 (2d Cir.1999) (citing *Maher,* 108 F.3d at 1524). A sufficient factual basis may be established by reading the charge to a defendant and eliciting the defendant's admission that he committed the conduct alleged if "the charge is uncomplicated, ... detailed and specific, and the admission unequivocal." *United States v. O'Hara,* 960 F.2d 11, 13 (2d Cir.1992); *Montgomery v. United States,* 853 F.2d 83, 85 (2d Cir.1988); *see also United States v. McFadden,* 238 F.3d 198, 200–01 (2d Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 223, —— L.Ed.2d —— (2001).

■ Here, the record reveals no factual basis for Tocci's plea. The court summarized the charge to Tocci as part of the advice of rights. Tocci was never specifically asked if he committed the acts alleged and Tocci's general acknowledgment of guilt did not respond, directly or indirectly, to the court's reading of the charge. Nowhere in the record is there indicated the identity of the alien allegedly transported by Tocci, how the transportation took place, or what occurred when Tocci and the alien arrived at the Port of Entry. Thus, in the circumstances presented here, the mere statement of the charge to Tocci coupled with a subsequent guilty plea failed to establish the requisite factual basis for the plea. *See Andrades*, 169 F.3d at 136.

■ The Second Circuit has not yet decided whether the omission of a factual basis for a plea rises to the level of a violation of a defendant's Fifth Amendment right to due process. *See Andrades*, 169 F.3d at 136. It is well settled that a guilty plea should not be overturned "when there has been a minor and technical violation ... which amounts to harmless error." *United States v. Harrison*, 241 F.3d 289, 292 (2d Cir.2001) (quoting *United States v. Renaud*, 999 F.2d 622, 624 (2d Cir.1993)). Here, Tocci offers evidence by way of his detailed affidavit which, if credited, would refute the charge in the information that Tocci transported Saimi to the United States unlawfully. *See* note 2 *supra.* The United States asserts now that Tocci and Saimi both made post-arrest statements which, if credited, establish Tocci's guilt. In the circumstances presented in this case, then, the failure of the court to elicit a factual basis for the plea leaves unresolved whether Tocci's conduct constituted the crime charged or whether Tocci voluntarily pleaded guilty without realizing that his conduct was not criminal. The omission of a factual basis here, therefore, was not a mere technical, minor or harmless error but was one which denied Tocci his Fifth Amendment right to due process of law. Tocci's petition must be granted on this ground.

### 4. Waiver of Constitutional Rights

Tocci contends that the court failed to advise him during his guilty plea that he had the rights under the Sixth Amendment to confront the witnesses against him and to a trial by jury. Thus, according to Tocci, his guilty plea was not made with the knowledge of the rights he was waiving. The United States responds that Tocci was advised of his right to a jury trial in writing and that the failure to advise him of his right confront witnesses was harmless error.

Rule 11 requires a court to "address the defendant personally in open court and inform the defendant of, and determine that the defendant understands" that, *inter alia*, he or she has the right to a trial by jury and to confront the witnesses against the defendant. Fed.R.Crim.P. 11(c)(3); *cf. United States v. Blackwell*, 199 F.3d 623, 625–26 (2d Cir.1999) (vacating a guilty plea on direct appeal where the district court failed to advise the defendant personally of the elements of the offense charged). Here, the court obtained from Tocci a signed "Waiver of Right to Trial by Jury." Docket No. 3 at Ex. 7. That waiver states that "[t]he magistrate judge has advised me of my right to trial by jury." However, the record here reveals that while the court advised Tocci of his right to a trial, the court did not advise Tocci that he was entitled to a jury trial. *See* Tr. of Hearing at 3 ("You don't have to say you're guilty if you don't want to. You can say that you're not guilty and have a lawyer and a trial and the case be postponed so that you have time to talk to

a lawyer."). Moreover, the court did not determine that Tocci understood this right as required by Rule 11(c). As to the right to confront witnesses, the record indicates that the court never advised Tocci of this right.

As noted above, coram nobis relief is available to correct only the most fundamental errors which have infringed substantial rights. Given the conclusion that Tocci is entitled to relief based on the court's failure to establish a factual basis for the plea, it is unnecessary to determine whether, standing alone, the failure to insure that Tocci understood and waived his rights to a jury trial and to confront witnesses would constitute such fundamental errors. *See United States v. Parkins*, 25 F.3d 114, 117 (2d Cir.1994) (stating that harmless error applies in guilty plea proceedings only to "such minor errors as a modest understatement of the maximum penalty, where the penalty actually imposed did not exceed the maximum as erroneously represented by the court") (quoting *Renaud*, 999 F.2d at 624–25). However, considered in conjunction with the other omissions discussed herein, the court's failure adequately to advise Tocci of these rights adds to the substantiality of the defects in Tocci's guilty plea.

### 5. Advice of Right to Appeal

 Finally, Tocci contends that the court failed to advise him of his right to appeal as required by Fed.R.Crim.P. 32(c)(5).

The court failed to advise Tocci of his right to appeal. However, this omission is subject to harmless error analysis. *See Peguero v. United States*, 526 U.S. 23, 119 S.Ct. 961, 965, 143 L.Ed.2d 18 (1999). The United States bears the burden of establishing harmless error by clear and convincing evidence. *See Soto v. United States*, 185 F.3d 48, 50 (2d Cir.1999). The

United States must demonstrate "that the defendant either actually exercised this right, waived this right, or had independent knowledge of this right." *Id.; Krevsky v. United States*, 186 F.3d 237, 239–40 (2d Cir.1999). Here, Tocci never appealed his conviction or sentence and never waived his right to appeal. Moreover, there is no indication in the record or elsewhere that Tocci had independent knowledge of this right before the time for filing a notice of appeal had expired. *See* Fed. R.App. P. 4(b)(1)(A)(i) (notice of appeal must generally be filed by a criminal defendant within ten days of the entry of judgment).[10] Accordingly, standing alone, the court's failure to advise Tocci of his right to appeal constituted a sufficiently significant breach of due process requirements to entitle Tocci to coram nobis relief. Considered in conjunction with the other defects in the plea proceedings discussed above, the extent of the defects in the plea proceedings rises well above the minimum standard of fundamental error required for coram nobis relief.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

1. A writ of error coram nobis is **GRANTED,** and Tocci's conviction and sentence are hereby **VACATED;**

2. The Clerk shall remit to Tocci the $475 fine and the special assessment of $25 previously paid by Tocci; and

3. A telephone conference will be held on **January 11, 2001 at 9:30 a.m.** to establish a schedule for completion of this case. **IT IS SO ORDERED.**

---

**10.** The judgment here was dated September 9, 1998. Docket No. 1 at Ex. D.